# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| Thu Thi Vu, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Case No. 4:12-CV-282 |
| | § | |
| W&D Apparel (Jordan) Corp. et al., | § | |
| | § | |
| Defendants. | § | |
| | § | |

## WELL & DAVID CORP.'S MOTION TO DISMISS UNDER
## FEDERAL RULES OF CIVIL PROCEDURE 12(B)(2) AND 12(B)(6)

Gerard G. Pecht
Federal ID No. 4784
State Bar No. 15701800
Eliot Fielding Turner
Federal ID No. 976577
State Bar No. 24066224
John J. Byron
Federal ID No. 1358259
State Bar No. 24078296

## Table of Contents

Table of Contents..................................................................................................................i

Table of Authorities ............................................................................................................ii

Nature and Stage of Proceedings......................................................................................1

Issues Presented ..................................................................................................................1

Standards of Review............................................................................................................2

Summary of Argument........................................................................................................3

Argument and Authorities ..................................................................................................4

    1.   Well and David Lacks Sufficient Contacts with the United States to Establish Personal Jurisdiction.....................................................................................................4

    2.   The Plaintiffs' Federal Causes of Action Do Not Apply to Extraterritorial Conduct...........8

    3.   Customary International Law Does Not Allow for Corporate Liability................................12

    4.   Plaintiffs Cannot Evade the Limits of the TVPRA by Recasting Their Claims Under the ATS............................................................................................................14

    5.   Many of Plaintiffs' State Law Claims Should Be Dismissed Because They Are Barred by Statutes of Limitations or Insufficiently Pleaded....................................................15

Conclusion ........................................................................................................................17

# TABLE OF AUTHORITIES

## CASES

*Abecassis v. Wyatt,*
    704 F. Supp. 2d 623 (S.D. Tex. 2010) ........................................................... 12, 14

*Adhikari v. Daoud and Partners,*
    697 F. Supp. 2d 674 (S.D. Tex. 2009) ..................................................................14

*Asahi Metals Indus. Co. v. Superior Court,*
    402 U.S. 102 (1987) .................................................................................................4

*Ashcroft v. Iqbal,*
    129 S. Ct. 1937 (2009) ...................................................................................2, 3, 5

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) .............................................................................................2, 3

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462 (1985) .................................................................................................6

*Campbell v. City of San Antonio,*
    43 F.3d 973 (5th Cir. 1995) .....................................................................................3

*Cardinal Health Solutions, Inc. v. Valley Baptist Med. Ctr.,*
    643 F. Supp. 2d 883 (S.D. Tex. 2008) ..................................................................17

*Cedeño v. Intech Group, Inc.,*
    733 F. Supp. 2d 471 (S.D.N.Y. 2010) ....................................................................9

*Conley v. Gibson,*
    355 U.S. 4 (1957) ....................................................................................................3

*Doe I v. Nestle, S.A.,*
    748 F. Supp. 2d 1057 (C.D. Cal. 2010) ..........................................................12, 13

*Doe v. ExxonMobil Corp.,*
    654 F.3d 11 (D.C. Cir. 2011) .......................................................................11, 12, 13

*EEOC v. Arabian American Oil Co.,*
    499 U.S. 244 (1991) ...............................................................................................11

*Enahoro v. Abubakar,*
    408 F. 3d 877 (7th Cir. 2005) ...............................................................................15

*Flomo v. Firestone Nat'l Rubber Co.,*
    643 F.3d 1013 (7th Cir. 2011) ...............................................................................13

*Freudensprung v. Offshore Tech. Servs., Inc.,*
   379 F.3d 327 (5th Cir. 2004) .................................................................. 6, 7

*Ham v. La Cienega Music Co.,*
   4 F.3d 413 (5th Cir. 1993) .........................................................................7

*Helicopteros Nacionales de Columbia S.A. v. Hall,*
   466 U.S. 408 (1984) ...................................................................................5

*Hennen v. McGinty,*
   335 S.W.3d 642 (Tex. App.—Houston [14th Dist.] 2011, pet. filed) ....................15

*Holt Oil & Gas Corp. v. Harvey,*
   801 F.2d 773 (5th Cir. 1986) .....................................................................7

*In re Plywood Antitrust Litig.,*
   655 F.2d 627 (5th Cir. Unit A Sept. 1981) .................................................3

*Jackson v. Tanfoglio Giuseppe S.R.L.,*
   615 F.3d 579 (5th Cir. 2010) .....................................................................5

*Johnston v. Multidata Sys. Int'l Corp.,*
   523 F.3d 602 (5th Cir. 2008) .................................................................. 4, 5

*Kiobel v. Royal Dutch Petroleum Co.,*
   621 F.3d 111 (2d Cir. 2010) .......................................................................12

*Luv N'Care, Ltd. v. Insta-Mix, Inc.,*
   438 F.3d 465 (5th Cir. 2006) .................................................................. 6, 8

*Mayes v. Stuart,*
   11 S.W.3d 440 (Tex. App.—Houston[14th Dist.] 2000, pet. denied) .....................15

*Microsoft Corp. v. AT&T Corp.,*
   550 U.S. 437 (2007) ...................................................................................11

*Morrison v. Nat'l Australia Bank Ltd.,*
   130 S. Ct. 2869 (2010) ...................................................................8, 9, 10, 12

*Norex Petroleum v. Access Indus.,*
   631 F.3d 29, 33 (2d Cir. 2010) .............................................................. 8, 9

*Quick Techs. Inc. v. Sage Group PLC,*
   313 F.3d 338 (5th Cir. 2002) .................................................................. 2, 4

*Sarei v. Rio Tinto,*
   671 F.3d 736 (9th Cir. 2011) .....................................................................13

*Seiferth v. Helicopteros Atuneros, Inc.*,
    472 F.3d 266 (5th Cir. 2006) ............................................................................ 6, 8

*Sosa v. Alvarez-Machain*,
    542 U.S. 692 (2004) ................................................................................... 12, 14

*Swarna v. Al-Awadi*,
    No. 06 Civ. 4880 (PKC), 2011 WL 1873356 (S.D.N.Y. 2011) ................................. 14

*Torch Liquidating Trust* ex rel. *Bridge Assocs. L.L.C. v. Stockstill*,
    561 F.3d 377 (5th Cir. 2009) ....................................................................... 3

*United Galvanizing Inc. v. Imperial Zinc Corp.*,
    No. H-08-0551, 2008 WL 4746334 (S.D. Tex. Oct. 27, 2008) ............................ 4

*United States ex rel. Grubbs v. Kanneganti*,
    565 F.3d 180 (5th Cir. 2009) ....................................................................... 3

*United States v. Phillip Morris USA, Inc.*,
    783 F. Supp. 2d 23 (D.D.C. 2011) ............................................................. 9

*United States v. Villanueva*,
    408 F.3d 193 (5th Cir. 2005) ....................................................................... 8

*Velez v. Sanchez*,
    754 F. Supp. 2d 488 (E.D.N.Y. 2010) ...................................................... 14

*Walker Ins. Servs. v. Bottle Rock Power Corp.*,
    108 S.W.3d 538 (Tex. App.—Houston [14th Dist.] 2003, no pet.) ...................... 16

*White v. Cole*,
    880 S.W.2d 292 (Tex. App.—Beaumont 1994, writ denied) ............................. 16

*Williams v. WMX Techs., Inc.*,
    112 F.3d 175 (5th Cir. 1997) ....................................................................... 16

*Yinguang Chem. Indus. Joint Stock Co. v. Potter*,
    607 F.3d 1029 (5th Cir. 2010) ...................................................................... 20

# RULES

Fed. R. Civ. P. 9 ......................................................................................................... 16

Fed. R. Civ. P. 12 ........................................................................................................ 2

iv

## STATUTES

18 U.S.C. § 1595.................................................................................................................10

18 U.S.C. § 1595........................................................................................................... 10, 14

28 U.S.C. § 1367.................................................................................................................16

28 U.S.C. §1350.................................................................................................................12

Tex. Civ. Prac. & Remedies Code § 16.003 ....................................................................15

## TREATISES

5B Charles Alan Wright & Arthur Miller, *Federal Practice & Procedure* § 1351 (2004) ..............................6

Restatement (Third) of Agency § 1.01 (2006) ........................................................................16

## Nature and Stage of Proceedings

Thu Thi Vu, 109 anonymous plaintiffs, Boat People SOS, and Nguyen Thang sued W&D (Apparel) Jordan Corp., Well and David Corp., Aramark Corporation, Aramark Uniform & Career Apparel LLC, Leaprodexim Vietnam, Coalimex VN, Academy, Ltd., the Vietnamese Ministry of Labor, War Invalids, and Social Affairs (MOLISA), Tran Viet Tu, Truong Xuan Thang, La Thanh Khoung, Loung Nhu Doung, Trinh Quang Trung, Nguyen Van Viet, Vu Thu Ha, Nguyen Xuan Toa, Nguyen Thi Kim Ngan, Nguyen Thanh Hoa, Nguyen Ngoc Quynh, and James Shen variously under the Trafficking Victims Reauthorization Protection Act (TVPRA), 15 U.S.C. § 1595(a), the Alien Tort Statute (ATS), 28 U.S.C. § 1350, the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962, and state-law causes of action.

Academy and Aramark both moved to dismiss, Dkt. Nos. 25, 26, 30, and in response, plaintiffs filed an amended complaint. Dkt. No. 43. Well and David Corp. moves to dismiss for lack of personal jurisdiction and failure to state a claim. Fed. R. Civ. P. 12(b).

## Issues Presented

1. Well and David Corp. is a Taiwanese company with no operations in the United States and the United States contacts alleged by plaintiffs do not establish that Well and David purposefully availed itself of the forum nor do plaintiffs' causes of action arise from Well and David's contacts. Should this Court exercise personal jurisdiction over Well and David when the company does not have minimum contacts with the United States or Texas?

2. Unless a statute clearly expresses Congress's intent that the statute should apply to conduct outside the United States, it does not cover such conduct. Here, all the allegations in the complaint about Well and David deal with conduct abroad, and the ATS, the TVPRA, and RICO give no indication that they apply extraterritorially. Should these claims be dismissed because the statutes do not apply to the conduct that forms the basis of the complaint?

3. Customary international law determines the scope of liability under the ATS. To violate customary international law, a norm must be specific, universal, and obligatory. Should plaintiffs' ATS claim against Well and David, a Taiwanese corporation, be dismissed when no norm of customary international law allows for corporate liability?

4. In enacting the TVPRA, Congress created a cause of action for forced labor victims and expressly excluded entities like Well and David from its reach. Should plaintiffs be allowed to circumvent Congress's intent by recasting their TVPRA claim under the ATS?

5. All of the alleged conduct in plaintiffs' complaint took place in late 2007 and early 2008, and plaintiffs did not sue until January 2012. Claims for conspiracy, false imprisonment, and negligence are subject to a two-year limitations period. Should the Court dismiss these state-law claims when they were filed beyond the applicable statute of limitations?

6. To adequately plead fraud a plaintiff must lay out the "who, when, where, and how" of the fraud. Plaintiffs' fraud allegations offer only generic statements that the supposedly fraudulent representations were made over a period of months without identifying precisely when they were made, who made them, or to whom they were made. Should plaintiffs' fraud claim be dismissed for failing to plead fraud with sufficient particularity?

## STANDARDS OF REVIEW

When personal jurisdiction is challenged, the plaintiff bears the burden of establishing a court's jurisdiction over a defendant. *Quick Techs. Inc. v. Sage Group PLC*, 313 F.3d 338, 343 (5th Cir. 2002). When a court's jurisdiction is based on a federal statute, a plaintiff must establish that the defendant has sufficient contacts "with the nation as a whole to justify imposition of United States law" under the Fifth Amendment's due process clause. *Id.*

All of the remaining issues arise under Federal Rule of Civil Procedure 12(b)(6) and are governed by the well-known standard for determining whether a plaintiff has stated a claim upon which relief can be granted. The Supreme Court has emphasized that this standard has force and should not be passed over lightly. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). As the Fifth Circuit has explained:

> The *Twombly* standard replaces the lenient and longstanding rule that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." The new reading raises a hurdle in front of what courts had previously seen as a plaintiff's nigh immediate access to discovery—modest in its demands but wide in scope.

*United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555. Those factual allegations must "raise a right to relief above the speculative level." *Id.* In particular, a complaint must contain "direct allegations or permit properly drawn inferences to support 'every material point necessary to sustain a recovery.'" *Torch Liquidating Trust* ex rel. *Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) (quoting *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995)). A complaint must be dismissed if it "lacks an allegation regarding a required element necessary to obtain relief." *Id.* Indeed, it has long been the law in the Fifth Circuit that "[a] complaint must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery *under some viable legal theory*." *In re Plywood Antitrust Litig.*, 655 F.2d 627, 641 (5th Cir. Unit A Sept. 1981) (emphasis added).

In addition, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. A complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* And a claim is only plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### SUMMARY OF ARGUMENT

This is a case where mostly foreign plaintiffs have sued mostly foreign defendants for conduct that occurred in several foreign countries. One of those foreign defendants, Well and David, is a Taiwanese company that allegedly operated a subsidiary in Jordan that employed many of the plaintiffs, all of whom are Vietnamese nationals hired in Vietnam. The sole connection that plaintiffs allege with the United States is that two American companies, Academy and Aramark, bought apparel from Well and David made in its Jordan factory; a connection that in no way relates to the plaintiffs' causes of action. These allegations are well below the

3

threshold required to establish personal jurisdiction over a foreign defendant with no presence in the United States and the Court should decline to do so here.

Even were this Court to find that it had jurisdiction over Well and David, there are a number of other independent reasons why it should still dismiss plaintiffs' complaint. Chief among those reasons is that none of the federal statutes plaintiffs have sued under apply extraterritorially. And the one federal statute that might provide for limited extraterritorial application, the TVPRA, expressly excludes defendants like Well and David from its reach.

In addition, plaintiffs' ATS claims should be dismissed because there is no basis in customary international law for holding corporations liable and by enacting the TVPRA Congress has foreclosed the ability of plaintiffs to bring similar claims under the ATS. Beyond these legal barriers to plaintiffs proceeding with their complaint, the facts as plaintiffs have alleged them omit material elements of their claims and fail to rise to the level of plausibility required by the Supreme Court in *Ashcroft v. Iqbal.* For all these reasons, Well and David asks that the Court dismiss plaintiffs' complaint with prejudice.

### ARGUMENT AND AUTHORITIES

### 1. Well and David Lacks Sufficient Contacts with the United States to Establish Personal Jurisdiction

The plaintiff bears the burden of establishing a court's jurisdiction over a defendant. *Quick Techs.*, 313 F.3d at 343. And when a court's jurisdiction is based on a federal statute, a plaintiff must establish that the defendant has sufficient contacts "with the nation as a whole to justify imposition of United States law" under the Fifth Amendment's due process clause. *Id.* In particular, courts should act with "great care and reserve . . . when extending [American] notions of jurisdiction into the international field." *Asahi Metals Indus. Co. v. Superior Court*, 402 U.S. 102, 115 (1987).

A plaintiff must plead facts that establish jurisdiction. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008); *United Galvanizing Inc. v. Imperial Zinc Corp.*, No. H-08-0551, 2008 WL 4746334, at *6 (S.D. Tex. Oct. 27, 2008) (Rosenthal, J.)

4

(prima facie showing "must include an averment of facts that, if credited by [the ultimate trier of fact], would suffice to establish jurisdiction over the defendant.") (internal citation and quotation omitted). The Supreme Court has made clear that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 129 S. Ct. at 1949. Even so, plaintiffs have offered nothing more than conclusory statements to establish personal jurisdiction. Compl. ¶ 31 ("[T]his court has personal jurisdiction over Defendants because Defendants have substantial, continuous and systematic business contacts with the United States and Defendants have purposefully availed themselves of the privilege of conducting activities in the United States."). The few facts that plaintiffs have alleged establish that this Court does not have personal jurisdiction over Well and David.

These are the allegations that bear on the Court's jurisdiction over Well and David. First, Well and David is a Taiwanese corporation with headquarters in Taiwan. Compl. ¶ 9. Second, Well and David operated a factory in Jordan with W&D Apparel (Jordan) Corp., a Jordanian corporation, which was its subsidiary. *Id.* ¶¶ 8-9. Other than plaintiffs' claim that Well and David contracted with U.S. companies, like Academy and Aramark, they do not point to any contacts with the United States. *Id.* ¶¶ 9, 37. That is not nearly enough to establish general or specific jurisdiction.

Establishing general jurisdiction over a non-resident defendant is difficult. *Jackson v. Tanfoglio Giuseppe S.R.L.*, 615 F.3d 579, 584 (5th Cir. 2010). To do so, the defendant's contacts with the forum must be "continuous and systematic." *Helicopteros Nacionales de Columbia S.A. v. Hall*, 466 U.S. 408, 416 (1984). The "nature and quality" of a nonresident's contacts must be significant enough to "constitute a general presence in the [forum]." *Johnston*, 523 F.3d at 612. That is, the defendant must have a business presence in the forum. *Jackson*, 615 F.3d at 584. Selling a product, even in substantial quantities to the forum, is not enough. *Id.* Here, because Well and David has no operations or presence in the United States, plaintiffs cannot establish general jurisdiction.

Nor have plaintiffs alleged sufficient facts to establish specific jurisdiction. The Fifth Circuit employs a three-part test to determine specific jurisdiction. *Luv N'Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). First, the plaintiff must establish that the defendant purposefully directed its activities toward the forum or purposely availed itself of the privileges of conducting activities there. *Id.* Second, the plaintiff must establish that the cause of action arises out of or results from the defendant's forum-related contacts. *Id.* Third, the exercise of personal jurisdiction must be fair and reasonable. *Id.*

Furthermore, personal jurisdiction is claim-specific. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006). "If a defendant does not have enough contacts to justify the exercise of general jurisdiction, the Due Process Clause prohibits the exercise of jurisdiction over *any claim* that does not arise out of or result from the defendant's forum contacts." *Id.* at 274–75 (emphasis added); *see also* 5B Charles Alan Wright & Arthur Miller, *Federal Practice & Procedure* § 1351 (2004) ("There is no such thing as supplemental specific personal jurisdiction; if separate claims are pled, specific personal jurisdiction must independently exist for each claim and the existence of personal jurisdiction for one claim will not provide the basis for another claim.").

Here, plaintiffs' own complaint negates their conclusory assertion that Well and David purposefully availed themselves of the forum. As plaintiffs allege, Well and David's contractual relationships were the result of Academy and Aramark "knowingly and voluntarily seek[ing] international suppliers and vendors." *Id.* ¶¶ 43, 46. That is precisely the opposite of purposeful availment.

Even still, entering into a contract with a United States-based company for work performed abroad is not a forum-directed activity. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 478 (1985) (finding that a "contract with an out-of-state party alone [cannot] automatically establish sufficient minimum contacts") (emphasis removed); *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004) (entering into "long-term business relationship" with a Texas resident does not constitute

purposeful availment for specific jurisdiction); *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986) (holding that foreign defendant's Texas-directed activities "in the course of developing and carrying out [a] contract" with a Texas resident were "insufficient to constitute purposeful availment"). Likewise, communications related to the performance of a contract are insufficient to establish personal jurisdiction. *Freudensprung*, 379 F.3d at 344 ("[T]his Court has repeatedly held that the combination of mailing payments to the forum state, engaging in communications related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant.").

Moreover, even had Well and David purposefully availed themselves of the forum, all the allegations make clear that the United States's relationship with the plaintiffs' causes of action is at best tangential. *See, e.g.*, *Ham v. La Cienega Music Co.*, 4 F.3d 413, 416 (5th Cir. 1993) (affirming district court's dismissal on personal-jurisdiction grounds where defendant's contacts with Texas had a "highly attenuated relationship" to plaintiff's cause of action). In *Freudensprung*, the Fifth Circuit concluded that it could not exercise specific jurisdiction over a Panamanian corporation that had been sued by a Texas-resident plaintiff for a tort claim. 379 F.3d at 344. The plaintiff there claimed that a contract between his employer, a Texas firm, and the Panamanian corporation to provide professional services at a project in West Africa, meant that his tort claim arose out of the Panamanian company's contacts with Texas. *Id.* However, because the plaintiff was not a party to the contract between the Panamanian company and his employer, the court concluded that his case did not "arise out of or relate to" the Panamanian company's contacts with Texas. *Id.*

Here, the link between the alleged contracts between Well and David and Academy and Aramark and the litigation is even more tenuous. The plaintiffs' causes of action under the TVPRA and ATS can hardly be said to arise out of a contract to

7

buy apparel from Well and David. Indeed, plaintiffs acknowledge as much. In their own pleading they say that W&D Apparel "operated the factory *in Jordan, where the majority of the causes of action arose.*" Compl. ¶ 8 (emphasis added). In addition, none of the plaintiffs are parties to the alleged contracts between Aramark and Academy and Well and David.

The same is true of plaintiffs' state-law claims against Well and David. As the Fifth Circuit has made clear, "the Due Process Clause prohibits the exercise of jurisdiction over any claim that does not arise out of or result from the defendant's forum contacts." *Seiferth*, 472 F.3d at 275. Here plaintiffs' state law claims, which all relate to an employment relationship entered into in Vietnam to be performed in Jordan, do not and cannot arise out of Well and David's contacts with Texas. *Luv N'Care, Ltd.*, 438 F.3d at 469.

Accordingly, this Court should find that there is no personal jurisdiction over Well and David and that plaintiffs' claims against it should be dismissed.

## 2. Plaintiffs' Federal Causes of Action Do Not Apply to Extraterritorial Conduct

Even were there personal jurisdiction, plaintiffs cannot state a claim because the conduct that they allege occurred outside of the United States and the federal statutes they invoke do not apply extraterritorially. It is "a longstanding principle of American law that legislation of Congress, unless a contrary intent appears otherwise, is meant to apply only within the territorial jurisdiction of the United States." *Morrison v. Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869, 2877 (2010) (internal quotation marks and citations omitted); *see also United States v. Villanueva*, 408 F.3d 193, 197 (5th Cir. 2005). Thus, as the Supreme Court has bluntly put it, "[w]hen a statute gives no clear indication of an extraterritorial application, it has none." *Morrison*, 130 S. Ct. at 2878.

Invoking this principle, the Second Circuit has recently concluded that RICO does not apply extraterritorially. In *Norex Petroleum v. Access Industries*, the appellants argued that "because a number of RICO's predicate acts possess an extraterritorial reach, RICO itself possesses an extraterritorial reach." 631 F.3d 29, 33 (2d Cir. 2010).

The court concluded that the appellant's attempt to infer the extraterritorial application of RICO would violate *Morrison* because "even when a statute provides for some extraterritorial application, the presumption against extraterritoriality operates to limit that provision to its terms." *Morrison*, 130 S. Ct. at 2883; *Norex*, 631 F.3d at 33 (citing *Morrison*, 130 S. Ct. at 2883). Other courts have also concluded that the extraterritorial reach of a predicate act under RICO does not mean that RICO itself has extraterritorial reach. *United States v. Phillip Morris USA, Inc.*, 783 F. Supp. 2d 23, 29 (D.D.C. 2011) ("[W]hether or not a criminal enterprise committed a predicate act with extraterritorial scope . . . there is no evidence that Congress intended to criminalize foreign racketeering activities under RICO."); *Cedeño v. Intech Group, Inc.*, 733 F. Supp. 2d 471, 473 (S.D.N.Y. 2010) ("Plaintiffs' superficial argument—that since the federal statutes prohibiting money laundering are . . . extraterritorial in nature, a RICO action predicated on violations of those statutes should be given extraterritorial application—. . . entirely misapprehends both the teachings of *Morrison* and the nature of RICO.").[1] This Court too should reject any similar attempts at misdirection.

The plaintiffs' limited factual allegations concerning the United States are not enough to bring their RICO claim back within the statute's territorial reach either. As the Court noted in *Morrison*, "it is a rare case of prohibited extraterritorial applications that lacks *all* contact with the territory of the United States." *Morrison*, 130 S. Ct. at 2884 (emphasis added). Here almost all of the conduct alleged in the complaint is said to have occurred abroad. The only link to the United States is that some of Well and David's products were purchased by American companies and sold by those companies in the United States. Such "slim contacts with the United States . . . are insufficient to establish extraterritorial application of RICO." *Norex*, 631 F.2d at 33. Because the law does not support the extraterritorial application of

---

[1] *Cedeño* was decided a little over a month before the Second Circuit issued its opinion in *Norex*.

RICO and the complaint makes clear that plaintiffs' RICO claim is focused on extraterritorial conduct, that claim should be dismissed.[2]

It is also the case that the TVPRA does not apply extraterritorially to Well and David. The TVPRA creates a civil cause of action for violations of its criminal provisions. 18 U.S.C. § 1595. That section gives no indication that it applies extraterritorially. Indeed, only one section of the TVPRA hints at extraterritorial application, but that section of the statute cannot apply to Well and David by its express terms. *See id.* § 1596. Even where a statute "provides for some extraterritorial application, the presumption against extraterritoriality operates to limit that provision to its terms." *Morrison*, 130 S. Ct. at 2869. Here that limitation should be enforced.

18 U.S.C. § 1596(a) allows the United States to prosecute offenses under the TVPRA that occur abroad only if certain other conditions are met.[3] For the United States to bring such a prosecution, the offender must be either a United States national or lawful permanent resident, as defined by section 101 the Immigration and Nationality Act or present in the United States. The language of the INA contemplates its application to natural persons, but in any case it does not apply to Well and David. As a corporation, Well and David cannot be a lawful permanent resident or a U.S. national. Well and David also does not satisfy § 1596's second criterion for extraterritorial application, because it is not present in the United States. 18 U.S.C. § 1596(a)(2). Because the express terms of the only possible basis for applying the TVPRA extraterritorially categorically exclude its application to Well and David, the TVPRA claim against Well and David should be dismissed.

---

[2] Well and David adopts the briefs of its co-defendants regarding plaintiffs' RICO claims.

[3] The TVPRA creates civil liability for any criminal violation of certain of its provisions. *See* 18 U.S.C. § 1595. *Morrison* should foreclose any attempt to extend the reach of the TVPRA's civil remedies' extraterritoriality through a provision concerning extraterritorial *criminal* jurisdiction. Congress certainly did not foresee such an application and only acknowledged the provision's application in criminal cases. In describing an early version of § 1596, Congress said "[t]his section provides jurisdiction to U.S. courts for prosecution of certain slavery and trafficking offenses committed abroad, including slavery, peonage and trafficking under sections 1589 and 1591 of the U.S. Code. Prosecutions may only take place against a person already facing prosecution in a foreign jurisdiction if the Attorney General or the Deputy Attorney General approves such a prosecution." H. Rep. No. 110-430(I), at 55 (1st Sess. 2007).

The ATS likewise gives no indication that it applies extraterritorially.[4] And although it is clear that violations of the law of nations can occur abroad, that does not mean that the ATS applies extraterritorially. This case highlights why the presumption against extraterritoriality exists.

The presumption "protects against unintended clashes between our laws and those of foreign nations [that] could result in international discord." *EEOC v. Arabian American Oil Co.*, 499 U.S. 244, 248 (1991). As the Supreme Court has noted, "foreign conduct is generally the domain of foreign law," and "courts should assume that legislators take account of the legitimate sovereign interests of other nations when they write American laws." *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 455 (2007). The fact that the ATS refers to aliens and customary *international* law is not enough, for it surely protects aliens from violations of customary international law within the United States. If broad, territorially unencumbered language were enough to establish a statute's extraterritorial application "most statutes, including most federal criminal laws, would apply extraterritorially and cover conduct occurring anywhere in the world." *Doe v. ExxonMobil Corp.*, 654 F.3d 11, 76 (D.C. Cir. 2011) (Kavanaugh, J., dissenting). Indeed, the Supreme Court has recognized that "broad jurisdictional language" and statutory references to acts occurring in "foreign commerce" do not overcome the presumption against extraterritoriality. In *Morrison* the petitioners and the solicitor general argued that the Securities and Exchange Act of 1934's broad definition of "interstate commerce" created extraterritorial jurisdiction. *Morrison*, 130 S. Ct. at 2882. The Court, however, rejected that interpretation and noted that even an express reference to "foreign commerce" in a

---

[4] The Supreme Court has cast doubt on the extraterritorial application of the ATS. In *Kiobel v. Royal Dutch Petroleum*, No. 10-1491, the Court ordered additional briefing and argument on:

> Whether and under what circumstances the Alien Tort Statute, 28 U.S.C. §1350, allows courts to recognize a cause of action for violations of the law of nations occurring within the territory of a sovereign other than the United States.

Order, No. 10-1491, *Kiobel v. Royal Dutch Petroleum*, (S. Ct. Mar. 5, 2011). In the event that this Court were to find that the plaintiffs' ATS claim should not be dismissed for the other reasons Well and David explains in this motion, Well and David asks that the case be stayed pending resolution of this issue before the Supreme Court.

statute's definition of commerce was not sufficient to "defeat the presumption against extraterritoriality." *Id.* Simply put, because the ATS makes no reference to its extraterritorial application, it does not apply extraterritorially. Accordingly, plaintiffs' ATS claim should be dismissed.

### 3.   Customary International Law Does Not Allow for Corporate Liability

The Alien Tort Statute, 28 U.S.C. § 1350, is a statutory grant of jurisdiction that allows federal courts to hear suits by aliens for torts "committed in violation of the law of nations or a treaty of the United States." *Abecassis v. Wyatt*, 704 F. Supp. 2d 623, 651 (S.D. Tex. 2010) (Rosenthal, J.). When the ATS was enacted in 1789, causes of action under the statute were limited to suits for "violation of safe conducts, infringement of the rights of ambassadors, and piracy." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 724 (2004). New causes of action may be recognized sparingly, but not "for violations of any international law norm with less definite content and acceptance among civilized nations than the historical paradigms familiar when § 1350 was enacted." *Id.* at 732. In determining whether to allow an ATS claim to proceed, a court must ask "whether international law extends the scope of liability for a violation of a given norm to the perpetrator being sued, if the defendant is a private actor such as a corporation or individual." *Id.* at 732 n.20; *see also Abecassis*, 704 F. Supp. 2d at 654 ("[I]nternational law is the touchstone of the ATS analysis."). After an exhaustive survey of international law, the Second Circuit concluded that customary international law does not provide for corporate liability because that liability is not a specific, universal, or obligatory norm of international law. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 145 (2d Cir. 2010). Thus, the ATS does not allow federal courts to impose liability on corporations. *Id.*; *see also ExxonMobil*, 654 F.3d at 81 (Kavanaugh, J., dissenting) ("In cases such as this where no U.S. treaty is involved, claims under the ATS are defined and limited by customary international law, and customary international law does not extend liability to corporations."); *Doe I v. Nestle, S.A.*, 748 F. Supp. 2d 1057,1124 (C.D. Cal. 2010) ("[I]nternational law does not recognize corporate liability for violations of international law. Accordingly . . .

12

the Alien Tort Statute, as interpreted in *Sosa*, does not recognize an international law cause of action for corporate violations of international law.").

Although other circuits have addressed this question and concluded that there is corporate liability under the ATS, *see, e.g.*, *Sarei v. Rio Tinto*, 671 F.3d 736, 748 (9th Cir. 2011), their reasoning is unpersuasive.[5] Indeed, many have acknowledged that customary international law does not create corporate liability for its violation. *See, e.g.*, *ExxonMobil*, 654 F.3d at 42 ("The fact that the law of nations provides no private right of action to sue corporations addresses the wrong question and does not demonstrate that corporations are immune from liability under the ATS.").

For example, although the Ninth Circuit focused on whether customary international law allowed corporate liability in concluding that it did, the court was unable to identify any instances where that was the case. And indeed, the two cases it principally relied on in reaching that conclusion were premised on corporate liability grounded in *domestic* rather than *international* law. *See ExxonMobil*, 654 F.3d at 41–42 ("It is clear from the fact that the law of nations, outside of certain treaties, creates no civil remedies and no private right of action that federal courts must determine the nature of any remedy . . . by reference to federal common law rather than customary international law.") (internal citations omitted and emphasis added); *Flomo v. Firestone Nat'l Rubber Co.*, 643 F.3d 1013, 1020 (7th Cir. 2011) ("International law imposes substantive obligations and the individual nations decide how to enforce them."). That approach, of course, misses what *Sosa* requires.

Because *Sosa* requires a court to ask "whether international law extends the scope of liability for a violation of a given norm to the perpetrator being sued, if the defendant is a private actor such as a corporation or individual," and it is clear that international law does not, plaintiffs' ATS claim against Well and David should be dismissed. 542 U.S. at 732 n.20; *see also Abecassis*, 704 F. Supp. 2d at 654.

---

[5] The Supreme Court granted certiorari in *Kiobel* to resolve the circuit split. A decision in that case has been postponed until next term to allow for extra briefing on whether the ATS applies extraterritorially.

### 4.  Plaintiffs Cannot Evade the Limits of the TVPRA by Recasting Their Claims Under the ATS

As Well and David has explained, Congress expressly limited the extraterritorial scope of the TVPRA to preclude its application to entities like Well and David that do not have U.S. corporate citizenship or a presence in the United States. *See* 18 U.S.C. § 1596. In an attempt to evade those limitations, plaintiffs have recast their TVPRA claims as ones under customary international law and the ATS. The Court should not brook plaintiffs' attempt to subvert Congress's deliberate judgment that the TVPRA's territorial scope should be limited. Indeed, the Supreme Court said in *Sosa* that "a decision to create a private right of action is one better left to legislative judgment in the great majority of cases . . . . [T]he possible consequences of making international rules privately actionable argue for great judicial caution." *Sosa*, 542 U.S. at 726. Moreover, "the potential implications for the foreign relations of the United States should make courts particularly wary of impinging on the discretion of the Legislative and Executive Branches in managing foreign affairs." *Id.*

No circuit court has addressed this question, but a court in the Eastern District of New York found that the TVPRA preempted claims for forced labor and human trafficking that otherwise could have been brought under the ATS. *Velez v. Sanchez*, 754 F. Supp. 2d 488, 497 (E.D.N.Y. 2010) ("Section 1595 creates claims identical to [plaintiff's] ATS claims . . . . Congress has, as the Supreme Court contemplated it might in *Sosa*, limited ATS jurisdiction by enacting a statute that occupies the field of civil remedies for human trafficking and forced labor."); *cf. Swarna v. Al-Awadi*, No. 06 Civ. 4880 (PKC), 2011 WL 1873356, at *3-4 (S.D.N.Y. 2011) (allowing plaintiff to re-plead ATS claim for forced labor and trafficking under TVPRA); *but see Adhikari v. Daoud and Partners*, 697 F. Supp. 2d 674, 688 (S.D. Tex. 2009) (allowing duplicative ATS and TVPRA claims to proceed because at "preliminary stage in the litigation, Plaintiffs should be given the chance to proceed on both theories in order to assess over the course of discovery which best captures the nature of the events that took place, and the remedies that are sought.").

In interpreting whether a statute similarly grounded in international norms, the Torture Victims Protection Act, preempted customary-international-law based torture claims under the ATS, the Seventh Circuit concluded that it did. "If it did not, [the Torture Victims Protection Act] would be meaningless. No one would plead a cause of action under the Act and subject himself to its requirements if he could simply plead under international law." *Enahoro v. Abubakar*, 408 F. 3d 877, 855 (7th Cir. 2005). Allowing plaintiffs to plead their forced labor TVPRA claims under the ATS would cause the same anomalous result here—it would extend liability to entities Congress has expressly declined to hold liable and render a limitation in the TVPRA meaningless. As the court in *Enahoro* noted, "It is hard to imagine that the *Sosa* Court would approve of common law claims based on torture and extrajudicial killing when Congress has specifically provided a cause of action for those violations." *Id.* at 886. This Court should decline plaintiffs' invitation to upset Congress's judgment about how trafficking and forced labor claims should be prosecuted by private plaintiffs and dismiss the ATS claim against Well and David.

**5. Plaintiffs' State Law Claims Should Be Dismissed Because They Are Barred by the Statute of Limitations or Insufficiently Pleaded**

Many of plaintiffs' state-law claims should be dismissed because they are barred by the statute of limitations. Plaintiffs' negligence claim is subject to a two-year limitations period in Texas. Tex. Civ. Prac. & Remedies Code § 16.003; *Hennen v. McGinty*, 335 S.W.3d 642, 649 (Tex. App.—Houston [14th Dist.] 2011, pet. filed) ("A party must assert a claim for negligence no more than two years after the day the cause of action accrues."). Conspiracy and false imprisonment are likewise subject to two-year limitations periods. Tex. Civ. Prac. & Remedies Code. § 16.003; *Mayes v. Stuart*, 11 S.W.3d 440, 453 (Tex. App.—Houston[14th Dist.] 2000, pet. denied) ("The statute of limitations for conspiracy is two years."); *White v. Cole*, 880 S.W.2d 292, 295 (Tex. App.—Beaumont 1994, writ denied) (concluding false imprisonment is subject to a two-year limitations period). All of the allegations in plaintiffs' complaint relate to conduct that ended in March 2008. And plaintiffs did not file suit until January 2012, well beyond the applicable two-year limitations period. Because plaintiffs'

negligence, conspiracy, and false imprisonment claims are barred by the statute of limitations, they should be dismissed.

In addition, although plaintiffs contend that their breach-of-contract claim is brought against both Well and David and W&D Apparel, they only allege a contract between plaintiffs and W&D Apparel. Because plaintiffs have not alleged a material element of their breach of contract claim—that is a contract between Well and David and plaintiffs—this claim should also be dismissed.

Likewise, plaintiffs have failed to adequately plead fraud. Although plaintiffs make general allegations about the circumstances of the purportedly fraudulent statements, they do not plead the elements of fraud with the particularity required by Rule 9(b). Fed. R. Civ. Proc. 9(b). An allegation of fraud must include "the time, place and contents of the false representations, as well as the party making the misrepresentation and what [that person] obtained thereby." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 179 (5th Cir. 1997). They have not alleged when precisely or where the representations were made, to which (if any) of the plaintiffs they were made or who made them. Rule 9(b) requires particularity, and all plaintiffs have provided are generic allegations. "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out" and what the plaintiffs have provided is not enough. *Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010).

Moreover, the plaintiffs have not alleged that anyone from Well and David made any fraudulent representations. The plaintiffs attempt to establish Well and David's liability under an agency theory. But for an agency relationship to exist, the principal must have the right to control the agent. *Walker Ins. Servs. v. Bottle Rock Power Corp.*, 108 S.W.3d 538, 549 (Tex. App.—Houston [14th Dist.] 2003, no pet.); Restatement (Third) of Agency § 1.01 (2006). The plaintiffs have not alleged that Well and David had a right to control the Vietnamese entities that made the purportedly fraudulent statements. And a contract in itself does not amount to a right to control. *See Cardinal Health Solutions, Inc. v. Valley Baptist Med. Ctr.*, 643 F. Supp. 2d 883, 888–89

(S.D. Tex. 2008). Therefore, plaintiffs' fraud claim against Well and David must be dismissed.

Alternatively, because plaintiffs have failed to allege cognizable federal claims, Well and David asks that this court also dismiss the state-law claims that have been brought against it. 28 U.S.C. § 1367(c)(3).

## Conclusion

Because plaintiffs have failed to allege facts sufficient to establish personal jurisdiction over Well and David, and it is clear that they could not, Well and David asks that the Court dismiss the claims that have been made against it. In any event, Well and David asks that the Court dismiss the complaint because the federal causes of action brought against them do not apply extraterritorially and even if they did plaintiffs have failed to state a claim against Well and David. Accordingly, Well and David asks that the Court dismiss plaintiffs' claims against it with prejudice. Alternatively, Well and David asks that the Court stay this case pending the Supreme Court's resolution of *Kiobel v. Royal Dutch Petroleum*, which could be dispositive as to many of plaintiffs' claims.

May 2, 2012

Respectfully submitted,

/s/ Gerard G. Pecht
_____
    Gerard G. Pecht
    Federal ID No. 4784
    State Bar No. 15701800
    gpecht@fulbright.com
Fulbright Tower
1301 McKinney, Suite 5100
Houston, TX 77010-3095
Telephone: (713) 651-5151
Facsimile:   (713) 651-5246

OF COUNSEL
FULBRIGHT & JAWORSKI L.L.P.
Eliot Fielding Turner
Federal ID No. 976577
State Bar No. 24066224
eturner@fulbright.com
John J. Byron
Federal ID No. 1358259
State Bar No. 24078296
jbyron@fulbright.com

Attorney-in-Charge for Defendant Well
& David Corp.

    I certify that on May 2, 2012, I filed this motion using the Court's electronic filing system. Based on the Court's records, the motion was served on all counsel of record via ECF.

/s/ Gerard G. Pecht
_____
    Gerard G. Pecht

18