# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| THUY THI VU a/k/a PHUONG-ANH VU, JANE/JOHN DOES 1-109, BOAT PEOPLE SOS, AND DR. NGUYEN THANG, | § § § § § | |
| Plaintiffs, | § § | Case No. 4:12-cv-00282 |
| v. | § § | |
| W&D APPAREL (JORDAN) CORP.; WELL AND DAVID CORP.; ARAMARK CORPORATION; ARAMARK UNIFORM & CAREER APPAREL LLC; LEAPRODEXIM VIETNAM; COALIMEX VN; ACADEMY, LTD d/b/a ACADEMY SPORTS + OUTDOORDS; MINSTRY OF LABOR, WAR INVALIDS, AND SOCIAL AFFAIRS; TRAN VIET TU; TRUONG XUAN TRANH; LA TRANH KHUONG; LUONG NHU DUONG; TRINH QUANG TRUNG; NGUYEN VAN VIET; VU THU HA; NGUYEN XUAN TAO; NGUYEN THI KIM NGAN; NGUYEN THANH HOA; NGUYEN NGOC QUYNH; AND JAMES SHEN, | § § § § § § § § § § § § § § § § § § § | |
| Defendants. | § § | |

## DEFENDANTS COALIMEX VN AND NGUYEN VAN VIET'S
## <u>MOTION TO DISMISS</u>

Charles S. Kelley
MAYER BROWN LLP
700 Louisiana Street, Suite 3400
Houston, Texas 77002-2730
713.238.2634
713.238.4634 (Facsimile)

ATTORNEYS FOR DEFENDANTS
COALIMEX VN & NGUYEN VAN VIET

# TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF THE PROCEEDING ...................................................1

ISSUES ADDRESSED ........................................................................................2

STANDARDS OF REVIEW.................................................................................2

SUMMARY OF ARGUMENT..............................................................................4

FACTUAL ALLEGATIONS AGAINST COALIMEX AND MR. NGUYEN...........................5

ARGUMENT .......................................................................................................7

I.      This Court Lacks Personal Jurisdiction over Coalimex and Mr. Nguyen Because Neither Have the Required Contacts with the United States to Support it........................7

        A.      Coalimex's Purchase of Goods from U.S..............................................8

        B.      Mr. Nguyen's Single Eight-Day Journey to the United States Cannot Be 'Systematic and Continuous.'................................11

II.     Plaintiffs' Fail to State Legally Valid Federal Claims Against Coalimex and Mr. Nguyen Because the Extraterritorial Reach of the Statutes Invoked Do Not Extend to Acts by Foreign Actors on Foreign Soil Against Aliens...........................12

        A.      Plaintiffs Claims Against Coalimex and Mr. Nguyen Under the Trafficking Victims Prevention Reauthorization Act Are Outside That Statute's Limited Extraterritorial Scope.........................12

        B.      The Alien Tort Statute Does Not Give Jurisdiction to Claims Against Foreign Defendants from Conduct Arising on Foreign Soil. ..............14

III.    Plaintiffs' Negligence and Conspiracy Claims Against Coalimex and Mr. Nguyen Should Be Dismissed Because the Statute of Limitations for Those Claims Has Expired ..................................................17

IV.     Plaintiffs Fail to Allege Key Facts Supporting Any of the Claims Asserted Against Coalimex or Mr. Nguyen, Therefore All Asserted Claims Should Be Dismissed ...........................18

        A.      The Complaint Does Not Allege Intent or Purposefulness, as Required for Both the Conspiracy Claim and the Alleged Violations of International Law .............................................19

        B.      The Complaint Does Not Allege Knowledge, as Required for Both the Fraud and TVPRA Claims..........................................21

        C.      As a Matter of Law, The Facts Alleged Do Not Give Rise to a Duty of Care, as Required for the Negligence Claim .........................23

V.      Dr. Nguyen Thang and Boat People SOS Allege No Facts Whatsoever Supporting Their Defamation and Tortious Interference Claim Against Coalimex ..........................24

# TABLE OF CONTENTS

(continued)

**Page**

CONCLUSION ...................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abecassis v. Wyatt,*
    704 F. Supp. 2d 623 (S.D. Tex. 2010)...................................................................19

*Ace American Ins. Co. v. Huntsman Corp.,*
    255 F.R.D. 179 (S.D. Tex. 2008) .........................................................................3

*Adhikari v. Daoud & Partners,*
    697 F. Supp. 2d 674 (S.D. Tex. 2009)...................................................................22

*Arbaugh v. Y & H Corp.,*
    546 U.S. 500 (2006) ...........................................................................................14

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) .......................................................................................3, 23

*Calder v. Jones,*
    465 U.S. 783 (1984) .............................................................................................3

*Dalton v. R & W Marine, Inc.,*
    897 F.2d 1359 (5th Cir. 1990) ......................................................................9, 10, 11

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
    131 S. Ct. 2846 (2011) ..............................................................................8, 9, 11

*Greater Houston Transp. Co. v. Phillips,*
    801 S.W.2d 523 (Tex. 1990) ...............................................................................23

*Greenstone v. Cambex Corp.,*
    975 F.2d 22 (1st Cir. 1992).................................................................................22

*Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,*
    815 S.W.2d 223 (Tex. 1991) ...........................................................................7, 8

*Harold H. Huggins Realty, Inc. v. FNC, Inc.,*
    634 F.3d 787 (5th Cir. 2011) ........................................................................4, 5, 6

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*
    466 U.S. 408 (1984) ...............................................................................8, 9, 10, 11

*Hennen v. McGinty,*
    335 S.W.3d 642, 649 (Tex. App.—Houston [14th Dist.] 2011) ...........................17

*Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.,*
341 S.W.3d 323 (Tex. 2011) ................................................. 21

*Johnston v. Multidata Sys. Int'l Corp.,*
523 F3d 602 (5th Cir. 2008) ............................................. 9, 10, 11

*Kiobel v. Royal Dutch Petroleum Co.,*
132 S. Ct. 1738 (2012) ..................................................... 15

*Mackey v. Cont'l Airlines,*
No. 4:11-cv-4246, 2012 U.S. Dist. LEXIS 50101, at *6 (S.D. Tex. Apr. 10, 2012) .............. 17

*Mayes v. Stewart,*
11 S.W.3d 440, 453 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) .......................... 17

*Padilla v. United States,*
No. EP-05-CA-478-FM, 2007 U.S. Dist. LEXIS 65171 (W.D. Tex. Aug. 20, 2007) ........... 23

*Perkins v. Benguet Consolidated Mining Co.,*
342 U.S. 437 (1952) .......................................................... 8

*Samson v. Apollo Resources, Inc.,*
242 F.3d 629 (5th Cir. 2001) ................................................. 3

*Sosa v. Alvarez-Machain,*
542 U.S. 692 (2004) ..................................................... 15, 16

*Stuart v. Spademan,*
772 F.2d 1185 (5th Cir. 1985) ................................................ 2

*Submersible Sys., Inc. v. Perforadora Cent., S.A.,*
249 F.3d 413 (5th Cir. 2001) ................................................. 8

*Torch Liquidating Trust v. Stockstill,*
561 F.3d 377 (5th Cir. 2009) ................................................. 3

*Travelers Indem. Co. v. Calvert Fire Ins. Co.,*
798 F.2d 826 (5th Cir. 1982) ................................................. 3

*Triplex Comm'ns v. Riley,*
900 S.W.2d 716 (Tex. 1995) ................................................ 19

*Tuchman v. DSC Comm'ns Corp.,*
14 F.3d 1061 (5th Cir. 1994) ............................................... 21

*Wal-Mart Stores, Inc. v. Sturges,*
  52 S.W.3d 711 (Tex. 2001) ............................................................................. 25

*WFAA-TV, Inc. v. McLemore,*
  978 S.W.2d 568 (Tex. 1998) .......................................................................... 24

**STATUTES**

18 U.S.C. § 1590(a) ..................................................................................... 21

18 U.S.C. § 1596(a) ................................................................................ 13, 14

18 U.S.C. § 1596(a)(1) .................................................................................... 2

18 U.S.C. § 1596(a)(1), (2) ........................................................................... 14

18 U.S.C. § 1596(a)(2) .................................................................................... 2

18 U.S.C. § 1961 ........................................................................................ 6, 7

28 U.S.C. § 1350 ..................................................................................... 2, 15

**OTHER AUTHORITIES**

Fed. R. Civ. P. 8(a)(2) ........................................................................ 3, 18, 19

Fed. R. Civ. P. 9(b) ...................................................................................... 21

## NATURE AND STAGE OF THE PROCEEDING

Thuy Thi Vu, a/k/a Phuong-Anh Vu, and 109 other Vietnamese nationals, currently anonymous, assert claims arising from alleged mistreatment that occurred at a factory in Jordan where these plaintiffs claim to have travelled to work for W&D Apparel (Jordan) Corp. (a subsidiary of Well and David Corp.). Plaintiffs allege that Aramark Uniform & Career Apparel LLC (a subsidiary of Aramark Corp.) and Academy, Ltd. purchased clothing manufactured at this same Jordanian factory. Plaintiffs also claim that The Ministry of Labor, War Invalids and Social Affairs of Vietnam ("Ministry of Labor"), and several named government officials, participated in some way in the mistreatment in Jordan. The additional plaintiffs, Dr. Nguyen Thang and Boat People SOS, seek to recover for alleged defamation and tortious interference with business arising from statements made by government officials.

Coalimex VN ("Coalimex") and Mr. Nguyen Van Viet ("Mr. Nguyen") allegedly delivered the contract from W&D Apparel to Phuong-Anh Vu (and presumably the anonymous plaintiffs) and arranged for plaintiffs' transportation to Jordan. Plaintiffs assert the same claims against Mr. Nguyen as were asserted against Coalimex, except for the defamation and tortious interference claims, which are only asserted against Coalimex. Coalimex and Mr. Nguyen move to dismiss all claims against them for lack of personal jurisdiction, lack of subject matter jurisdiction, and failure to state a claim for which relief can be granted.[1]

## ISSUES ADDRESSED

1.  Where a foreign corporation has no contacts with the United States apart from certain limited, unrelated contracts to purchase goods from U.S. companies, may the court

---

[1] Academy, the Aramark defendants (collectively), and Well and David each moved to dismiss, and Plaintiffs stated on the record at the hearing on these motions they were abandoning the RICO claims; the Court correspondingly dismissed those claims. *See* Order [Dkt. No. 83]. Coalimex and Dr. Nguyen would similarly challenge the RICO claims, but for Plaintiffs' concession, and reserve the right to challenge the RICO claim if Plaintiffs' position on the RICO claims change as to Coalimex and Mr. Nguyen.

constitutionally exercise personal jurisdiction over the foreign corporation for claims out of events on foreign soil, wholly unrelated to those contracts?

2.      Where an individual has no contacts with the United States, apart from a single sojourn in the United States unrelated to the underlying facts of the litigation, was not served in the United States, and was not sued because of facts arising from that sojourn, may the court constitutionally exercise personal jurisdiction over the individual?

3.      When a defendant is not a "national of the United States or an alien lawfully admitted for permanent residence," 18 U.S.C. § 1596(a)(1), and is not "present in the United States," 18 U.S.C. § 1596(a)(2), can the court exercise extra-territorial jurisdiction under the Trafficking Victims Prevention Reauthorization Act despite the limits of section 1596(a)?

4.      When defendants are foreign nationals without significant connection to the United States and the acts that are the subject of the complaint occurred entirely within the borders of foreign sovereign nations and exclusively beyond United States territory, can the District Court exercise jurisdiction pursuant to the Alien Tort Statute (28 U.S.C. § 1350)?

5.      Where plaintiffs allege that all acts and resulting harm purportedly giving rise to negligence and conspiracy claims occurred over three years before filing a complaint, and those claims have two-year statutes of limitations, should the Court dismiss those claims?

6.      Where plaintiffs assert claims for intentional torts caused by third parties (forced labor and common law civil conspiracy), but allege no facts whatsoever to suggest the defendants intended the criminal acts of those third parties, have plaintiffs adequately alleged the required element of intent or purposefulness?

7.      Has the plaintiff sufficiently pled the required element of knowledge (for claims of common law fraud and violations of the TVPRA) when the complaint alleges no facts to suggest that defendants were aware third parties would commit criminal or other wrongful acts?

8.      Where the complaint is devoid of factual allegations from which to infer a defendant could have foreseen a third party would commit criminal acts, has the plaintiff adequately pled the elements of duty and proximate cause to support a negligence claim?

9.      Where the complaint asserts a defamation claim but fails to identify any statement published by the defendant that is defamatory, has the claim been adequately pled?

## STANDARDS OF REVIEW

Plaintiffs bear the burden to establish the existence of personal jurisdiction over Coalimex and Mr. Nguyen.  *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985).  Because the allegations in the complaint are controverted by the evidence attached to this Motion, the Motion should be granted unless Plaintiffs provide conflicting evidence to support their

allegations of jurisdiction. *Travelers Indem. Co. v. Calvert Fire Ins. Co.*, 798 F.2d 826, 831 (5th Cir. 1982). Personal jurisdiction over each defendant must be analyzed individually. *Calder v. Jones*, 465 U.S. 783, 790 (1984).

As to subject matter jurisdiction, Coalimex and Mr. Nguyen bring a facial challenge to the court's jurisdiction over the Alien Tort Statute claim in this case, so the Court must accept facts alleged in the Complaint[2] to be true at this stage. *Ace American Ins. Co. v. Huntsman Corp.*, 255 F.R.D. 179, 209 (S.D. Tex. 2008) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981) ("When presented with a facial challenge to subject matter jurisdiction, the court must accept all allegations in the complaint as true."). The Court's jurisdiction under the Alien Tort Statute turns on the interpretation of the statute, which is purely a question of law. *Samson v. Apollo Resources, Inc.*, 242 F.3d 629, 633 (5th Cir. 2001) (noting that questions of statutory interpretation are decided as a matter of law).

With respect to the sufficiency of the allegations, under Rule 8, a complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Complaint should be dismissed under Rule 12(b)(6) if Plaintiffs failed to meet the requirements of Rule 8. *E.g., Torch Liquidating Trust v. Stockstill*, 561 F.3d 377, 380 (5th Cir. 2009) (affirming dismissal under Rule 12(b)(6) for failure to allege injury).

To satisfy Rule 8, Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In this regard, the facts alleged must move the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "A claim for relief is plausible on its face 'when the plaintiff pleads factual

---

[2] The term "Complaint," as used herein, refers to Plaintiffs' current live pleading of Plaintiffs, which is, at present, the Second Amended Complaint [Dkt #43].

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 566 U.S. at 678). "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Id.* (quoting *Iqbal*, 566 U.S. at 679). When making this determination, courts generally accept allegations in a complaint as true, but this "tenet . . . is inapplicable to legal conclusions." *Iqbal*, 566 U.S. at 678.

## SUMMARY OF ARGUMENT

Coalimex is a Vietnamese company and Mr. Nguyen, a Vietnamese citizen. Because Coalimex has no assets, offices, employees, property, customers, or accounts in the United States, and the only contact it has with the United States is a handful of agreements to purchase goods from U.S. companies, United States courts lack personal jurisdiction over Coalimex. Similarly, Mr. Nguyen has no contact with the United States, with the sole exception being a single 8-day sojourn unrelated to these claims, and he, too, is not subject to personal jurisdiction.

Neither the TVPRA nor the ATS extend to the alleged extraterritorial conduct by Coalimex and Mr. Nguyen. Because the actions that allegedly caused harm to Plaintiffs and the actors committing them were and are located entirely outside United States territory, the scope of the TVPRA's jurisdiction would need to be effectively limitless to encompass the claims against Coalimex and Mr. Nguyen. But Congress, in creating some extraterritorial jurisdiction under the TVPRA, limited its reach. The presumption against extraterritoriality mandates limiting Congress' indication of extraterritorial scope to its express terms, and by those terms, the TVPRA claims against Coalimex and Mr. Nguyen are excluded. Similarly, the ATS was enacted to fill a perceived gap in the United States' ability to meet obligations to foreign powers, and is

4

limited in its extraterritoriality to encompass only claims arising from conduct within the United States or against U.S. citizens.

Plaintiffs' own complaint demonstrates that the negligence and conspiracy claims are subject to the statute of limitations, and those claims should be dismissed accordingly.

Coalimex's and Mr. Nguyen's activities in Vietnam do not suggest or imply they were aware of the third-party conduct in Jordan allegedly harming these Plaintiffs. The complaint does not contain any factual allegations to suggest either Coalimex or Mr. Nguyen could have foreseen, much less known of or intended, the alleged criminal conduct by such third persons in Jordan when Plaintiffs accepted their contracts and boarded the plane departing Vietnam. Thus, the non-federal, common-law claims should be dismissed for failure to state a claim because each requires some degree of intent, knowledge, or at least (as to negligence) foreseeability.

Finally, the live complaint fails to identify any act by Coalimex to support the defamation claim of Dr. Nguyen Thang and Boat People SOS, and that claim should be dismissed.

## FACTUAL ALLEGATIONS AGAINST COALIMEX AND MR. NGUYEN

Plaintiffs allege that Coalimex is in the business of supplying labor from Vietnam to other countries, including Jordan, Complaint [Dkt. No. 43] at ¶ 13, and that Mr. Nguyen "was at all relevant times the manager of COALIMEX Vietnam." *Id.* at ¶ 21; *see also id.* at ¶ 100 ("Plaintiffs assert . . . Nguyen Van Viet . . . [is an] employee[] or agent[] of the Vietnamese government and/or the Labor exporting companies."). According to Plaintiffs, the Vietnamese Ministries of Labor and Foreign Affairs "funded and worked directly with labor export companies," including Coalimex, "that transported Plaintiffs to Jordan pursuant to their agreements with Well and David and W&D Apparel." *Id.* at ¶ 37; *see id.* at ¶ 38 ("[T]he labor

export companies received funds . . . to provide cheap labor" and "agreed to provide workers to Well and David . . . .").

Although Ms. Phuong-Anh Vu "was recruited by a woman at Tang [Cong Ty Gia Day]," a labor export company not named in this lawsuit, the Complaint alleges that "the agents and employees of Leaprodexim," another labor export company, "and/or Coalimex called Phuong Anh Vu and other Plaintiffs to sign or stamp their thumbs on their contracts." *Id.* at ¶¶ 50, 52. Allegedly, Plaintiffs did not get to read the contracts, were required to provide a package, unopened, to "the managers in Jordan," and were transported to the airport in Hanoi. *Id.* at 52. "The labor export company promised Phuong Anh Vu and the others that they would be paid $220 a month, working 8 hours a day, plus incidentals of $80 a month, for a total of $300 per month for three years to sew clothing for foreign companies." *Id.* at 53.

In connection with the statement of the claims, Plaintiffs make additional assertions. In connection with their TVPRA claim, Plaintiffs assert that "MOLISA, Vietnamese government agents, working together with the labor exporting companies participated by deceiving Plaintiffs and by 'recruit[ing], harbor[ing], and transport[ing]' Plaintiffs to Jordan where they were imprisoned at the factory." *Id.* at ¶ 79. In connection with their RICO claim, Plaintiffs assert that Coalimex "and any of [its] agents and/or employees were 'persons' within the meaning of 18 U.S.C. § 1961" who "engaged in a pattern of racketeering activity for the common illegal purpose of providing trafficked labor at low costs to the factory in Jordan . . ., and earning profits therefrom," and that Coalimex made contracts with Well and David and W&D Apparel. *Id.* at ¶ 91. In connection with their fraud claim, Plaintiffs assert as follows:

> MOLISA, its agents and employees, together with Leaprodexim and Coalimex and their agents, told Plaintiffs that they would be making $220 a month, working 8 hours a day, plus incidentals of $80 extra a month, for a total of $300 per month for three years to sew clothing for foreign companies. ***MOLISA and other***

*government agencies acted together with the labor export companies to recruit Plaintiffs through false representations about the facts, including, but not limited to, the location of the work, the nature of the work, the amount of compensation, the work conditions, and the risk to their lives and safety.* The representations were made for the purpose of inducing Plaintiffs to rely on them, and if Plaintiffs would have known that the representations were false, they would never have agreed to travel to Jordan. Plaintiffs relied on Defendants representations in ignorance of the falsity thereof. The false statements regarding wages and working conditions were made throughout 2007 and 2008 leading up to Plaintiffs departure for Jordan in late January 2008.

*Id.* at ¶ 102 (emphasis added).

## ARGUMENT

I.    **This Court Lacks Personal Jurisdiction over Coalimex and Mr. Nguyen Because Neither Have the Required Contacts with the United States to Support it.**

Neither Coalimex nor Mr. Nguyen possess the necessary contacts with the United States sufficient to establish personal jurisdiction in this case. The evidence demonstrates Coalimex has virtually no relationship with the United States: it is not incorporated here, and it has no current employees, equipment, offices, agents or property in this country. Mr. Nguyen, a Vietnamese citizen and domiciliary, has only been to the States once, for only eight days, and has no other contact with the United States. The claims asserted against Coalimex and Mr. Nguyen do not arise out of any acts in the United States at all, much less acts related to Coalimex or Mr. Nguyen's limited contacts with this country. Because there are no facts that indicate or suggest Coalimex and Mr. Nguyen are subject to either general or specific jurisdiction in this case, this Court should dismiss all claims against them.

In theory, a defendant's contacts with a forum can give rise to either general or specific jurisdiction. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 227 (Tex. 1991). For specific jurisdiction to exist, a cause of action must arise from or relate to a defendant's activities "purposefully directed" at the forum and must result from alleged injuries that "arise out of or relate to" those activities, such that the forum's exercise of

jurisdiction over the defendant would not offend due process. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); *Guardian Royal*, 815 S.W.2d at 227-28. Given that the allegations against Coalimex and Mr. Nguyen only recite actions in Vietnam not directed towards this forum and harm allegedly resulting in Jordan, specific jurisdiction does not exist over Coalimex and Mr. Nguyen as to these claims.

Nor can Plaintiffs meet the burden of showing that either Coalimex or Mr. Nguyen have the continuous and systematic contacts necessary to establish that this Court could exercise general jurisdiction over them. The "continuous and systematic contacts" test is a difficult one to meet, however, requiring "extensive contacts between a defendant and a forum." *Submersible Sys., Inc. v. Perforadora Cent., S.A.,* 249 F.3d 413, 419 (5th Cir. 2001). For Mr. Nguyen, an individual, "the paradigm forum" is his domicile; for Coalimex, it is "an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853-54 (2011). As shown here, neither Coalimex nor Mr. Nguyen have any significant contacts with Texas or the United States, let alone such extensive, continuous and systematic contacts as to be "at home" here. Accordingly, all claims against them should be dismissed.

### A. Coalimex's Purchase of Goods from U.S. Companies Fails to Reach the Level of Systematic and Continuous Contact with the United States.

Plaintiffs do not even allege that Coalimex is subject to personal jurisdiction in this case. This omission is not surprising because Plaintiffs have no basis for asserting the requisite "systematic and continuous" contacts exist. Coalimex is a citizen of Vietnam with no offices in the United States and is not incorporated in any U.S. state. Declaration of Nguyen Thanh Hai ("Nguyen, T.H. Decl.") at ¶¶ 4-5. "Coalimex has no current employees, equipment, offices, assets, agents (including agents for service of process). *Id.* at ¶ 7. The company has no bank

accounts, subsidiaries, telephone listings or addresses in the United States." *Id.* Coalimex has never operated any businesses in the United States; it does not regularly sell or provide services to U.S. citizens, nor does the company target or solicit U.S. consumers. *Id.* at ¶¶ 8-9. In short, the company's contacts with the U.S. fall far short of making Coalimex "at home" in the United States. *Goodyear Dunlop Tires Operations*, 131 S. Ct. at 2854.

Since 2007, Coalimex has engaged in several contracts for the purchase of frozen food and marine equipment with U.S. companies, but Coalimex does not even send representatives to the U.S. in connection with these purchases. Nguyen, T.H. Decl. at ¶ 10. The goods are imported into Vietnam, shipped by these U.S. entities from their U.S. offices or other countries, and any negotiations occur by phone, fax, or email. *Id.*

It is well-established law that "mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." *Helicopteros Nacionales de Colombia*, 466 U.S. at 418; *see Johnston v. Multidata Sys. Int'l Corp.*, 523 F3d 602, 612 (5th Cir. 2008) ("[P]urchases of goods from Texas vendors, standing along, are not the type of contacts that will establish general jurisdiction."); *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1362 n. 3 (5th Cir. 1990) ("[P]urchases and trips related thereto, even if they occur regularly, are not, standing alone, a sufficient basis for the assertion of jurisdiction."). Even where plaintiffs have established far more contacts with the forum than "mere purchases," courts have found no personal jurisdiction.

In *Helicopteros*, the Supreme Court reversed the judgment of the Supreme Court of Texas, holding that a Columbian helicopter company could not be constitutionally subject to personal jurisdiction in Texas. 466 U.S. at 418-19. The helicopter company purchased eighty

percent of its helicopter fleet (worth over $4 million) and other related equipment from a Texas vendor at regular intervals. *Id.* at 411. Beyond that, the defendant also: 1) ventured to Texas; 2) negotiated agreements in Texas; and 3) sent pilots and other personnel to Texas for training. *Id*. The U.S. Supreme Court concluded that these contacts did not constitute the kind of "continuous and systematic" general business contacts necessary for general jurisdiction, such as conducting business in the forum, holding directors meetings there, and maintaining an agent. *Id.* at 418.

Likewise, in *Johnston*, the Fifth Circuit reversed a district court order denying a motion to dismiss claims against a Delaware corporation with a principal place of business in St. Louis, Missouri and three affiliated Canadian corporations. 523 F.3d at 604-05. In addition to $5.2 million in purchases of goods from the forum, the Delaware corporation had an ongoing contract for services with a company in Texas, employed two Texas residents (each of whom worked remotely), and had a former corporate director that lived in Texas. *Id.* at 612. According to the court, the service agreement "add[ed] little to the analysis" and the corporation did not have "a general business presence in the state based on the residence of two employees and a former director." *Id.* Even the contacts of one of the Canadian defendants, though "more substantial than the other defendants," still "fail[ed] to create general jurisdiction." *Id.* at 613.

And in *Dalton*, the Fifth Circuit soundly rejected a plaintiff's claim that a defendant boat charterer's purchases, advertising and construction of boats in the forum state was enough for general jurisdiction to exist. 897 F.2d at 1362. In addition to the defendant's advertising in the forum, the *Dalton* plaintiff demonstrated that the defendant purchased, constructed and chartered boats in the forum with in-state companies sufficient to yield "some 12.9% of [its] total revenues." *Id.* "These contacts, however, are not sufficiently systematic and continuous to constitute a general presence in the state." *Id.*

Coalimex's contacts with the forum are less than those the defendants in *Helicopteros*, *Johnston*, and *Dalton*. Coalimex purchases goods from U.S. companies, and has no other contacts with the United States. These minimal contacts fall far short of level necessary for the Court to exercise general jurisdiction over Coalimex, and the claims against it should be dismissed.

**B.     Mr. Nguyen's Single Eight-Day Journey to the United States Cannot Be 'Systematic and Continuous.'**

Mr. Nguyen, a Vietnamese citizen and domiciliary, cannot be subject to the personal jurisdiction of the courts of the United States. The "paradigm forum" for exercising personal jurisdiction over an individual is the individual's domicile. *Goodyear Dunlop Tires Operations*, 131 S. Ct. at 2853. Far from being a U.S. or Texas domiciliary, Mr. Nguyen has essentially zero connections with the forum. *See* Decl. of Nguyen Van Viet at ¶ 7 ("I have no property in the United States; I do not conduct personal business in the United States; I do not earn any income from the United States; I do not pay U.S. income taxes; I do not have any relatives in the United States.") Mr. Nguyen's only trip to, and only contact with, the United States came during an eight day span from April 15 – 23, 2012 when he visited New York and Washington D.C.. *Id.* at ¶ 5. Although there may be instances in which a court can exercise personal jurisdiction over an individual that is not a domiciliary in the forum, the undersigned counsel has been unable to find any authority for this Court exercising general jurisdiction over Mr. Nguyen on the basis of one eight-day trip to the United States. General jurisdiction is thus improper.

II. **Plaintiffs' Fail to State Legally Valid Federal Claims Against Coalimex and Mr. Nguyen Because the Extraterritorial Reach of the Statutes Invoked Do Not Extend to Acts by Foreign Actors on Foreign Soil Against Aliens.**

A. **Plaintiffs Claims Against Coalimex and Mr. Nguyen Under the Trafficking Victims Prevention Reauthorization Act Are Outside That Statute's Limited Extraterritorial Scope.**

The Trafficking Victims Prevention Reauthorization Act ("TVPRA") does not make the United States' federal district courts a global forum for civil litigation arising from alleged human trafficking anywhere in the world. Sustaining the TVPRA claims against Coalimex and Mr. Nguyen would have precisely this effect. The allegations plainly demonstrate that the plaintiffs who were allegedly victims of human trafficking and, at all relevant times, are Vietnamese citizens residing in Vietnam, located temporarily in Jordan on work visas. Neither Coalimex nor Mr. Nguyen are alleged to be U.S. citizens. None of the acts alleged to be human trafficking occurred in the United States. If these facts confer extraterritorial jurisdiction over a claim of human trafficking under the TVPRA, then any act of human trafficking anywhere in the world would meet the same low standard. Congress clearly did not intend this result.

The Supreme Court's recent guidance in *Morrison v. National Australia Bank Ltd.* is clear: "When a statute gives no clear indication of an extraterritorial application, it has none." 130 S. Ct. 2869, 2878 (2010). The presumption "appl[ies] … in all cases," *id.* at 2881, even those where a statute does contain an unequivocal statement of extraterritorial effect. "[W]hen a statute provides for some extraterritorial application, the presumption against extraterritoriality operates to limit that provision to its terms." *Id.* at 2883 (citing *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 455-56 (2007)).

The language of 18 U.S.C. § 1596(a) clearly indicates that sections 1581, 1583, 1584, 1589, 1590, and 1591 of Title XVIII have extraterritorial application where the offender committing the conduct proscribed in those sections meets the conditions precedent section

1596(a) imposes.[3]  Specifically, section 1596(a) gives U.S. courts "extra-territorial jurisdiction" where the "offender" who engaged in the proscribed conduct is "a national of the United States, … an alien lawfully admitted for permanent residence," or "is present in the United States" when the conduct occurs.  18 U.S.C. §1596(a).  But section 1596(a) is limited to its own terms under *Morrison*, and it is error to extend broader extraterritorial application than its express terms permit.  To paraphrase from *Morrison*, "it would be odd for Congress to indicate the extraterritorial application of the whole [TVPRA] by means of a provision imposing a condition precedent to its application abroad."  130 S. Ct. at 2882.

Even assuming, for the present motion, that the civil reach and criminal reach of the TVPRA are coextensive,[4] the claims against Coalimex and Mr. Nguyen still fail because neither of them meet the conditions precedent for extraterritorial jurisdiction under section 1596.  Plaintiffs allege Coalimex "is a labor export company and a member of the Vietnam Labour Export Association," and that it has a branch "at Cong Thong, Yen Vien, Ha Noi, Vietnam."  Complaint [Dkt. No. 43] at ¶ 13.  Plaintiffs further allege that either Coalimex or another labor export company defendant, Leaprodexim, called Phuong-Anh Vu while she was still in Vietnam.

---

[3] The full text of 18 U.S.C. § 1596(a) is as follows:

> In General.—
>
> In addition to any domestic or extra-territorial jurisdiction otherwise provided by law, the courts of the United States have extra-territorial jurisdiction over any offense (or any attempt or conspiracy to commit an offense) under section 1581, 1583, 1584, 1589, 1590, or 1591 if—
>
> (1) an alleged offender is a national of the United States or an alien lawfully admitted for permanent residence (as those terms are defined in section 101 of the Immigration and Nationality Act (8 U.S.C. 1101)); or
>
> (2) an alleged offender is present in the United States, irrespective of the nationality of the alleged offender.

[4] A question remains, as to other defendants in this case, whether section 1596 confers extra-territorial scope to the civil action created by section 1595, which section 1596 does not list.  As shown here, the resolution of this question does not affect the objections of Coalimex and Mr. Nguyen to the extraterritoriality reach, so they take no position on whether section 1596 applies to civil actions under section 1595.

*Id.* at ¶ 52. Plaintiffs allege Mr. Nguyen was "the manager of COALIMEX Vietnam," and an "employee[] or agent[] of the Vietnamese government and/or the Labor exporting companies." *Id.* at ¶¶ 21, 100. Plaintiffs do not allege that either Coalimex or Mr. Nguyen is "a national of the United States[,] … an alien lawfully admitted for permanent residence," or "present in the United States," 18 U.S.C. § 1596(a)(1), (2), nor do they allege any factual basis from which to conclude this. To the contrary, Plaintiffs allegations lead to only one conclusion—that Coalimex and Mr. Nguyen are citizens and residents of Vietnam, and that they were in Vietnam at all times relevant to the TVPRA claim asserted against them.[5] This claim therefore fails on its face, and should be dismissed.

**B.** **The Alien Tort Statute Does Not Give Jurisdiction to Claims Against Foreign Defendants from Conduct Arising on Foreign Soil.[6]**

The Alien Tort Claims Act or Alien Tort Statute ("ATS") was adopted for narrow reasons and to remedy a specific gap that would otherwise exist in the jurisdiction of the U.S. courts. In particular, prior to the drafting and ratification of the Constitution, there was concern that the "Continental Congress was hamstrung by its inability to 'cause infractions of treaties, or of the law of nations to be punished.'" *Sosa v. Alvarez-Machain*, 542 U.S. 692, 716 (2004). The severity of this problem derives from the possibility that failing to remedy a violation of

---

[5] The attached declarations confirm this fact, but Coalimex and Mr. Nguyen need not rely on those affidavits for this purpose, since Plaintiffs' allegations fail to state a valid TVPRA claim on their face. If this Court determines that the section 1596 imposes a jurisdictional limitation, however, *see Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515-16 (2006) ("If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed," but "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.") (internal citations omitted), Coalimex and Mr. Nguyen urge this Court to consider all evidence of record in order to determine whether it has jurisdiction.

[6] It appears that Plaintiffs ATS claim is based solely on international norms relating to forced labor and human trafficking. *See, e.g.*, Plaintiffs' Response to Aramark's Motion to Dismiss [Dkt. No. 65] at 26-29. To the extent Plaintiffs assert other violations of international law corresponding to the common law torts of fraud, negligence, and conspiracy, Plaintiffs have identified no universal, specific, international norm prohibiting the conduct complained of, and the ATS does not grant jurisdiction because there is none.

international law against a foreign citizen, particularly one representing his nation's government, might result in an international incident and "could rise to an issue of war." *Id.* at 715 (citation omitted). The ATS was therefore enacted to grant jurisdiction for U.S. courts to hear claims by aliens seeking redress lest the United States be put in the untenable position of being unable to satisfy a foreign sovereign "for diplomatic offenses under the law of nations." *Id.* at 724.

There is no "clear indication" that the ATS was intended to grant jurisdiction for completely extra-territorial events, as required by *Morrison*.[7] There is some indication that the ATS could have been intended to provide jurisdiction for aliens seeking a remedy in cases where American citizens violated international law outside the borders of the United States. *See id.* at 721 (discussing the opinion of Attorney General William Bradford that the ATS would give jurisdiction over a claim against American citizens who participated in the plunder of a British slave colony in Sierra Leone) (citing 1 Op. Atty. Gen. 57, 59). But those circumstances fit within the same general cast of offenses against aliens that could be seen as offenses against foreign sovereigns, mandating that the United States provide some legal recourse to compensate the aggrieved party to avoid the appearance of approving the offense. *See, e.g., Sosa*, 542 U.S. at 724 (describing compensation "at the expense of the delinquent" for violations of international law as familiar to the legislators at the time of the ATS's enactment) (internal quotations and citations omitted).

All the alleged acts here are outside the United States, within the domain of a foreign sovereign, and do not involve acts that could be seen as obligating the United States to provide

---

[7] Coalimex and Mr. Nguyen acknowledge that the ATS has been cited as a source for jurisdiction over claims by aliens against foreign parties, but the Supreme Court has never approved this exercise of jurisdiction and acted *sua sponte* to address the question in a decision expected in the near future. *See Kiobel v. Royal Dutch Petroleum Co.*, 132 S. Ct. 1738 (2012) (ordering additional briefing on "Whether and under what circumstances the Alien Tort Statute, 28 U.S.C. §1350, allows courts to recognize a cause of action for violations of the law of nations occurring within the territory of a sovereign other than the United States.").

legal recourse to the plaintiffs under international law to avoid offending a foreign sovereign. Therefore, the ATS does not confer jurisdiction over the alleged violations of international law. To hold otherwise would make the United States judicial system a quasi-international tribunal for enforcing the norms of international law, including in cases where foreign nationals sue their own governments. It stretches logic too far to conclude that a statute enacted to avoid offending foreign powers gives this Court jurisdiction to put those foreign powers, their government officials, and their private citizens on trial for acts within their own borders.

The Supreme Court's reasoning that the presumption operates to limit the extent of extraterritorial scope to the extent of its justification mandates dismissal in this case. *See also Morrison*, 130 S. Ct. at 2883 ("[W]hen a statute provides for some extraterritorial application, the presumption against extraterritoriality operates to limit that provision to its terms."). This reasoning applies here because the views expressed by contemporary authorities and recited anew in *Sosa* were related to particularly American interests, such as providing a remedy for wrongs committed on U.S. soil or by U.S. citizens. *See* 542 U.S. at 716-17 (describing incidents involving assaults on foreign ambassadors in Philadelphia and New York), 721 (quoting an Attorney General Opinion regarding ATS jurisdiction over acts of plunder by Americans in Sierra Leone).

The ATS claim should also be dismissed because corporate liability is not a universally accepted norm of international law. Other defendants have presented arguments supporting this conclusion, and Coalimex joins in those arguments and incorporates them by reference here. *See* Academy's Motion to Dismiss [Dkt. No. 50] at 24; Well and David's Motion to Dismiss [Dkt. No. 51] at 12-13.

**III.    Plaintiffs' Negligence and Conspiracy Claims Against Coalimex and Mr. Nguyen Should Be Dismissed Because the Statute of Limitations for Those Claims Has Expired.**

Plaintiffs' own Complaint demonstrates that the statute of limitations has run on their negligence and civil conspiracy claims, and Plaintiffs conceded at the June 28, 2012, hearing that equitable tolling did not apply.    Those claims should accordingly be dismissed.[8]    Because Plaintiffs own pleading demonstrates the application of the statute of limitations to these two claims, they should be "'dismissed for failure to state a cause of action.'"   *Mackey v. Cont'l Airlines*, No. 4:11-cv-4246, 2012 U.S. Dist. LEXIS 50101, at *6 (S.D. Tex. Apr. 10, 2012) (quoting *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1984)).   The last alleged acts by Coalimex or Mr. Nguyen occurred on January 29, 2008.   Second Amended Complaint [Dkt. No. 43] at ¶¶ 52-54.   All injuries allegedly resulting from acts by Coalimex or Mr. Nguyen occurred during or before the spring of 2008.   *Id.* at ¶¶ 55-68.   This is well beyond the statute of limitations for the claims at issue for negligence and conspiracy under Texas law.   Negligence has a two-year statute of limitations.   *Hennen v. McGinty*, 335 S.W.3d 642, 649 (Tex. App.—Houston [14th Dist.] 2011) *reversed on other grounds by* No. 11-0288, 2012 Tex. LEXIS 558 (June 29, 2012).   Civil conspiracy also has a two-year statute of limitations.   *Mayes v. Stewart*, 11 S.W.3d 440, 453 (Tex. App.—Houston [14th Dist.] 2000, pet. denied).   The period of time from spring 2008 until January 27, 2012, when Plaintiffs filed their Original Complaint, *see* Complaint [Dkt. No. 1], is well over three years.   Plaintiffs have therefore pleaded a defense to their own claims, and those claims should be dismissed.

---

[8] In light of the Plaintiffs' concession and the Court's order granting Well and David's motion to dismiss on the basis of limitations, *see* Order [Dkt. No. 83], dismissal of the negligence and conspiracy claims should be a foregone conclusion.  None of the facts alleged show a difference relevant to this analysis between Well and David's position and the positions of Coalimex and Mr. Nguyen, who now request the Court afford them the same relief.

**IV.  Plaintiffs Fail to Allege Key Facts Supporting Any of the Claims Asserted Against Coalimex or Mr. Nguyen, Therefore All Asserted Claims Should Be Dismissed.**

Assuming without conceding that either Texas law applies to the non-federal claims, or that the applicable law does not differ in any relevant way, Plaintiffs claims fail on their merits because the Complaint does not "show[] that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Plaintiffs' allegations relating to Coalimex and Mr. Nguyen are few, and allegations linking either of them to the specific events complained of are even fewer.  In fact, Mr. Nguyen is only alleged to be a manager and employee of Coalimex; no other facts form the alleged basis of the claims against Mr. Nguyen.  For that reason alone, the claims against Mr. Nguyen should be dismissed.  Even assuming the law imposed some liability on a manager for acts of his employer in which he took no part and of which he had no knowledge, Plaintiffs also do not allege necessary facts to support their claims against Coalimex, and the claims against Mr. Nguyen fail for that reason, as well.[9]

Taking the factual allegations of the complaint as true, Coalimex transports laborers from Vietnam to other countries, and receives money from the Vietnamese government for doing so.  Complaint [Dkt. No. 43] at ¶¶ 13, 37.  Coalimex (or possibly Leaprodexim) transported Plaintiffs to Jordan to satisfy a contract with Well and David and W&D Apparel, from which Coalimex earned a profit.  *Id.* at ¶¶ 37, 91.  Coalimex (or possibly Leaprodexim) allegedly promised Plaintiffs compensation totaling $300 per month for their labor in Jordan.  *Id.* at ¶ 53.  Once in Jordan, Plaintiffs suffered abuses at the hands of third parties, with no alleged relationship to Coalimex.  *Id.* at ¶¶ 54-67.  Noticeably absent from the Complaint are any factual allegations that

---

[9] Because any claim against Mr. Nguyen appears to be derived from the allegations against Coalimex, the remaining arguments in this section merely refer to Coalimex, but the arguments are equally applicable to Mr. Nguyen.

would support an inference that Coalimex intended, knew, or even should have known that third parties would withhold Plaintiffs' wages or commit tortious acts against them.

Every claim against Coalimex requires some element of mens rea, and every claim therefore fails. Different states of mind and different pleading standards apply for the different claims, as described below. One thing, however, holds true for all of the claims—Plaintiffs seek to hold Coalimex responsible for the independent, intentional, tortious conduct of third parties on the basis of, at best, a contract with the tortfeasor. Absent some culpable state of mind, which Plaintiffs have not even alleged, there is no factual basis for the asserted claims.[10]

### A. The Complaint Does Not Allege Intent or Purposefulness, as Required for Both the Conspiracy Claim and the Alleged Violations of International Law.

Both the civil conspiracy claim and the forced labor claim require Plaintiffs to show Coalimex had, as its purpose, the unlawful acts allegedly perpetrated by individuals while Plaintiffs were in Jordan. A civil conspiracy, under Texas law, is "a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Triplex Comm'ns v. Riley*, 900 S.W.2d 716, 719 (Tex. 1995). The wrong or injury must be known and intended. *See id.* ("The 'gist of a civil conspiracy' is the injury that is intended to be caused.") (quoting *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 856 (Tex. 1968)). Similarly, this Court has previously held that the standard for liability for violations of international law is one of purpose, not merely knowledge. *Abecassis v.*

---

[10] Plaintiffs do not allege that either Coalimex or Mr. Nguyen are liable on the basis of an agency theory or other theory of vicarious liability. Plaintiffs allege only that Academy and Aramark are vicariously liable for acts of Well and David and/or W&D Apparel, Second Amended Complaint [Dkt. No. 43] at ¶ 97-99, and that "MOLISA, Well and David, and/or W&D Apparel are vicariously liable to Plaintiffs for any tortious acts committed by the individuals under theories of actual authority, apparent authority, respondeat superior, ratification, negligent hiring, and/or vice-principal liability." *Id.* at ¶ 100. Coalimex and Mr. Nguyen therefore do not address this "Fourth Cause of Action" in the Complaint, *see id.* at 30, but reserve the right to address it, including by a motion to dismiss, if Plaintiffs later assert liability under such a theory.

*Wyatt*, 704 F. Supp. 2d 623, 654 (S.D. Tex. 2010) ("'[N]o [international] consensus exists for imposing liability on individuals who *knowingly* (but not purposefully) aid and abet a violation of international law.'") (quoting *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 259 (2nd Cir. 2009)) (emphasis in original).

Plaintiffs' general allegation that "Defendants" intended to further a plan "to obtain cheap labor and exploit Plaintiffs for the purpose of making profit and distributing apparel to the United States," Complaint [Dkt. No. 43] at ¶ 116, and others like it cannot support an inference that Coalimex intended for Plaintiffs to suffer the injuries alleged. These allegations, no matter how pejorative, are equally as consistent with a lawful purpose as an unlawful one and therefore do not satisfy the requirements of Rule 8. *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'") (quoting *Twombly*, 550 U.S. at 557). The Complaint alleges that Plaintiffs were enticed by compensation totaling $300 per month for full-time employment, *id.* at ¶ 102, which compares favorably to the $35 monthly salary Phuong Anh Vu was receiving in Vietnam. *See id.* at ¶ 51. The Complaint also alleges that the Plaintiffs are among the "over 95% of the working population of Vietnam" who labor in poverty. *Id.* at ¶ 48. Even at the wages promised, the labor obtained would be cheap labor, when compared to wages in the United States, where the goods are bound for market. There is nothing inherently unlawful in Coalimex "exploiting" workers' current poverty by connecting those workers with jobs abroad that offer nearly ten times as much as the workers currently earn, even if the labor comes cheap at that price. Moreover, there are no allegations that Coalimex did anything more than this. The ATS and civil conspiracy claims therefore fail on their merits and should be dismissed.

**B.      The Complaint Does Not Allege Knowledge, as Required for Both the Fraud and TVPRA Claims.**

The Court should dismiss both the common law fraud claim and the TVPRA claim because Plaintiffs fail to allege facts supporting the inference that Coalimex knew what Plaintiffs would suffer in Jordan as a result of accepting the contract from Well and David.  Plaintiffs allege that Coalimex (or possibly Leaprodexim) represented that Plaintiffs would receive compensation of approximately $300 per month in Jordan, that Plaintiffs relied on this statement to their detriment because it ultimately turned out to be false.  The missing element, not alleged, is that Coalimex knew that Well and David did not intend to abide by these terms.[11]  *See Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011) (reciting elements of common law fraud including that "when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion").   The TVPRA likewise requires Plaintiffs show that Coalimex "knowingly recruit[ed], harbor[ed], [or] transport[ed]" Plaintiffs "for labor or services in violation of [Chapter 77 of Title XXIII]."  18 U.S.C. § 1590(a).  Plaintiffs make no such allegation in the Complaint, nor do they attempt to support such an inference with factual allegations.  As a result, both the TVPRA and fraud claims fail on the merits.

With regard to the fraud claim, this complete absence of allegations is even more striking in the face of the requirement that fraud be pleaded with particularity.  Fed. R. Civ. P. 9(b).  To meet the requirements of Rule 9(b) and "plead scienter adequately, a plaintiff must set forth specific facts that support an inference of fraud."  *Tuchman v. DSC Comm'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994) (citing *Greenstone v. Cambex Corp.*, 975 F.2d 22, 25 (1st Cir. 1992)).

---

[11] The facts alleged do not suggest that Coalimex ever made "a positive assertion" that Well and David would not breach its contract with Plaintiffs, therefore this element of the fraud claim is also absent.

"[A] complaint's general averment of the defendant's 'knowledge' of material falsity" is inadequate, "unless the complaint *also* sets forth specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading." *Greenstone*, 975 F.2d at 25 (emphasis in original).

In *Greenstone*, the court considered whether factual allegations that the defendant company failed to disclose a potential liability from a lawsuit where a third-party filed that lawsuit a few months after the alleged misrepresentation. *Id.* at 26. While the complaint alleged, "in conclusory fashion," that the defendant knew that part of its business model was prohibited by contracts with a third-party IBM subsidiary, this was not enough. *Id.* at 25. The court then considered factual allegations about the timing of the lawsuit, the speed with which it settled, insider stock sales occurring on an indeterminate date, and the Defendant's intent to carry out the conduct eventually giving rise to the lawsuit. *Id.* at 26. None of these facts supported the inference that the defendant knew, when it made statements about its business, that the lawsuit was "probable." *Id.* at 26-27. Plaintiffs do not make any effort to allege facts supporting the inference that Coalimex knew, in advance, that Well and David (or anyone else) would later engage in the tortious conduct complained of.

Some degree of facts are necessary to support the inference of knowledge for Plaintiffs TVPRA claim, also, even under the lower standard of Rule 8. *See also Adhikari v. Daoud & Partners*, 697 F. Supp. 2d 674, 681, 684 (S.D. Tex. 2009) (considering extensive allegations regarding the basis for defendant's knowledge of forced labor conditions to be relevant when denying motion to dismiss). In *Adhikari*, the plaintiffs alleged that defendants knew of prior complaints by workers and of earlier, similar incidents to those complained of and involving the same labor supply company. *Id.* Plaintiffs' need to allege similarly substantial facts supporting

the inference that Coalimex knew **before hand** what would later transpire in Jordan presents a high burden to their fraud claim against Coalimex; the allegations lacking even a general averment of knowledge are far below the thresholds of Rule 8 and Rule 9(b). This weakness is fatal, and the claims should be dismissed.

### C.  As a Matter of Law, The Facts Alleged Do Not Give Rise to a Duty of Care, as Required for the Negligence Claim.

On the facts alleged, Coalimex cannot be negligent because the alleged harm, forced labor and assault, was caused by the independent criminal conduct of third parties not under Coalimex's control. "Generally, there is no duty to control the conduct of a third person," such as by denying the third person an opportunity to engage in criminal conduct. *Padilla v. United States*, No. EP-05-CA-478-FM, 2007 U.S. Dist. LEXIS 65171, at *40 (W.D. Tex. Aug. 20, 2007) (citing *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 309 (Tex. 1983)). Courts decide whether a duty exists as a matter of law, based on the facts of the case. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). "[F]oreseeability of the risk is 'the foremost and dominant consideration,'" of all the factors courts consider. *Id.* (quoting *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex.1987)).

Plaintiffs have alleged no facts to support their conclusory assertion that "Defendants had a duty of reasonable care towards Plaintiffs" and "Defendants failed to use due care to protect Plaintiffs from foreseeable harm." Complaint [Dkt. No. 43] at ¶ 106. Nothing in the complaint supports the conclusion that the alleged criminal conduct was foreseeable to Coalimex at the time it informed Plaintiffs of the available contract for labor in Jordan. While Plaintiffs have alleged that human trafficking is, at a global level, a problem, *see id.* at ¶ 33, this allegation alone cannot be enough to open the door to fact discovery of an involved labor staffing company every time the final employer engages in potentially criminal or tortious conduct. *See Twombly*, 550

U.S. at 559 ("[I]t is only by taking care to require allegations that reach the level suggesting [liability] that we can hope to avoid the potentially enormous expense of discovery in cases with no reasonably founded hope that the discovery process will reveal relevant evidence . . ..") (internal citations and quotations omitted).  Absent any factual basis for the unsupported assertion that the alleged criminal and tortious conduct of third persons was foreseeable to Coalimex in advance, the negligence claim fails as a matter of law and should be dismissed.

**V.    Dr. Nguyen Thang and Boat People SOS Allege No Facts Whatsoever Supporting Their Defamation and Tortious Interference Claim Against Coalimex.**

Plaintiffs fail to allege the first and most basic requirement for a defamation claim against Coalimex, specifically, that Coalimex "published a statement." *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998).  Plaintiffs allege that "Vietnamese government officials continue to publish articles as late as March 2012 in Vietnamese newspapers stating that BPSOS is a 'reactionary organization,'" Complaint [Dkt. No. 43] at ¶ 119, but never allege that Coalimex published any articles or other statements relating to Dr. Thang or Boat People SOS. *See id.* at ¶¶ 117-20.  Nor does the article included in the complaint as Exhibit E contain any statements that could be attributed to Coalimex.  In fact, the article attempts to deflect blame from the government and foreign employers to "labor-export companies," generally.  Ex. E to Complaint [Dkt. No. 43-5] at 4.  This tends to support the inference that the publisher was not acting on behalf of Coalimex or any other labor-export company, rather than the reverse. Without any factual allegation that Coalimex published a statement, there can logically be no allegation that the statement was false or made with any particular state of mind, as required to state a claim for defamation.  *See WFAA-TV*, 978 S.W.2d at 571 ("To maintain a defamation cause of action, the plaintiff must prove that the defendant: (1) published a statement; (2) that was defamatory concerning the plaintiff; (3) while acting . . . negligence, if the plaintiff was a

private individual, regarding the truth of the statement.") (citing *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989)). As a result, Plaintiffs have alleged ***none*** of the elements of a claim for defamation against Coalimex, and that claim should be dismissed.

To state a claim for tortious interference, Plaintiffs must allege an independent tort, *e.g., Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 713 (Tex. 2001), which would appear to be defamation, in this case. Since the tortious interference claim necessarily depends on the underlying defamation, and there is no basis for the defamation claim against Coalimex, the tortious interference claim should also be dismissed.

## **CONCLUSION**

Even accepting the facts alleged in the Complaint, Coalimex and Mr. Nguyen have no connection to the United States, the acts complained of have no connection to the United States, and Coalimex and Mr. Nguyen did not commit the acts complained of. Moreover, Coalimex and Mr. Nguyen had no way of knowing that someone would commit the alleged unlawful acts. Although the legal theories differ with the claims, the basic underlying premise is the same: hauling someone into court in a strange country for acts they did not do and did not know about is unfair. The failure to justify their attempt to do so with factual allegations supporting Plaintiffs' claims is fatal to those claims, at least against Coalimex and Mr. Nguyen, who respectfully request this Court dismiss all claims against them.

DATED: July 10, 2012                    Respectfully submitted,


                                        By:  /s/  *Charles S. Kelley*            __
                                        Charles S. Kelley
                                        *Attorney-in-Charge*
                                        Texas Bar No. 11199580
                                        Southern District I.D. No. 15344
                                        MAYER BROWN LLP
                                        700 Louisiana Street, Suite 3400
                                        Houston, Texas 77002-2730
                                        (713) 238-2634
                                        (713) 224-4634 FAX
                                        Email: ckelley@mayerbrown.com




**OF COUNSEL:**

William H. Knull, III
Texas Bar No. 11636900
Southern District I.D. No. 7701
Kyle E. Friesen
Texas Bar No. 24061954
Southern District I.D. No. 1010300
MAYER BROWN LLP
700 Louisiana Street, Suite 3400
Houston, TX 77002-2730
Phone: 713-238-3000
Fax: 713-238-4888
Email: wknull@mayerbrown.com
Email: kfriesen@mayerbrown.com


                                        **ATTORNEYS   FOR   DEFENDANTS
                                        COALIMEX  VN,  and  MR.  NGUYEN
                                        VAN VIET**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing document is being automatically served on all known Filing Users in this matter through the Court's Notice of Electronic Filing Service, on this the 10th day of July, 2012, and on all parties or counsel who is not a Filing User by United States first class mail, postage prepaid.

_/s/_Kyle E. Friesen___
Kyle E. Friesen